UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH A. FRAKER,<br><br>           Plaintiff,<br><br>    vs.<br><br>KFC CORPORATION; YUM! BRANDS, INC.,<br><br>           Defendants. | Case No. 06-CV-01284-JM (WMC)<br><br>**ORDER DENYING MOTION TO STAY ACTION; GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE** |

KFC Corporation and Yum! Brands, Inc. (collectively "KFC") move to dismiss the second amended consumer class action complaint ("SAC") filed by Plaintiff Deborah A. Fraker. Plaintiff separately moves to stay the action pending resolution by the California Supreme Court of a case raising an issue of federal preemption of state tort actions. All motions are opposed. Pursuant to Local Rule 7.1(d)(1), these motions are appropriate for decision without oral argument. For the reasons set forth below, the court denies the motion to stay and grants the motion to dismiss with prejudice and without leave to amend. The Clerk of Court is instructed to close the file.

## BACKGROUND

Plaintiff brings this consumer class action against KFC under the Class Action Fairness Act of 2005. "KFC uses partially hydrogenated vegetable oil in its cooking process." (SAC ¶11). Plaintiff explains that partially hydrogenated vegetable oil contains trans fatty acids which raise "the levels of total blood cholesterol and LDL cholesterol . . . . According to the United States Food and

Drug Administration ("FDA"), there is a direct, proven relationship between diets high in trans fat content and LDL ("bad") cholesterol levels and, therefore, an increased risk of coronary heart disease." (SAC ¶12).

Plaintiff alleges that KFC's products are high in trans fat content. (SAC ¶18). Plaintiff alleges that KFC has disclosed the trans fat content of its food products on its website and certain restaurant locations. Id. KFC represents that its pot pies contain 14 grams of trans fat and other products contain between 4.0 grams and 4.5 grams of trans fat. Plaintiff represents that on January 1, 2006, the FDA began requiring food companies to list trans fat content on packaged foods but that foods served at restaurants are not subject to these requirements. (SAC ¶14). Pursuant to the National Academy of Health's Institute of Medicine, the "only safe level of trans fat in the diet is zero, and in 2004, an FDA advisory panel concluded that trans fat is more harmful to humans than saturated fat." (SAC ¶16).

While other fast food companies have begun using, or have made plans to begin using, oils without trans fats, KFC delayed changing over "to such oils because of the modest relative costs involved in converting its restaurants to oils without trans fats, and the slightly higher costs of some such oils." (SAC ¶20). Plaintiff alleges that KFC announced that it "will replace the trans fat-laden hydrogenated oils it uses with healthier soybean oil by April 2007." Id.

Plaintiff alleges that KFC advertises that "We still take pride in doing things The Colonel's way, utilizing only the highest quality ingredients, innovative recipes, and time-tested cooking methods." KFC also represents that "it provides the 'best food,' and that its food can be part of a healthy lifestyle, stating that, 'The good news is that all foods can fit into a balanced eating plan. That includes tacos, pizza, chicken, seafood and burgers.'" KFC also states that "You can enjoy 'fast food' as part of a sensible balanced diet." (SAC ¶23).

Based upon these generally described allegations, Plaintiff asserts seven claims for violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200; violation of California's False Advertising Law, Bus. & Prof. Code §§ 17500; negligent misrepresentation; intentional misrepresentation; breach of implied warranty fo fitness for purpose; unjust enrichment; and for violation of California's Consumer Legal Remedies Act. For a second time, KFC moves to dismiss all claims.

1    In its October 19, 2006 Order granting KFC's motion to dismiss the first amended complaint
2 ("Order"), the court concluded that the representations at issue were not actionable. Among other
3 things, the court noted that "[n]o reasonable consumer would rely upon the statements as specific
4 representations as to health, quality, or safety," the statements are non-actionable puffery, and the
5 statements lack the sort of positive assertions of fact required to state a claim under any of the causes
6 of action alleged by Plaintiff. (Order at p. 6:7-10).

7    While the SAC sets forth the same allegedly actionable representations, Plaintiff now alleges
8 that the statements violate various state and federal statutes and regulations pertaining to food and
9 drugs, including 21 U.S.C. § 378, Cal. Health and Safety Code § 110660, and 21 C.F.R. §§ 101.19(a)
10 and 101.14. (SAC ¶25-27).

## DISCUSSION

**Legal Standards**

Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in "extraordinary" cases. United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981). Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). Courts should not dismiss a complaint "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle [the party] to relief." Moore v. City of Costa Mesa, 886 F.2d 260, 262 (9th Cir. 1989) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)), cert. denied, 496 U.S. 906 (1990). The defect must appear on the face of the complaint itself. Thus, courts may not consider extraneous material in testing its legal adequacy. See Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991). The courts may, however, consider material properly submitted as part of the complaint. See Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1989).

Finally, courts must construe the complaint in the light most favorable to the plaintiff. See Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116 S. Ct. 1710 (1996). Accordingly, courts must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. See Holden v. Hagopian, 978 F.2d 1115, 1118 (9th Cir. 1992).

1  However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule
2  12(b)(6) motion. <u>See</u> <u>In Re Syntex Corp. Sec. Litig.</u>, 95 F.3d 922, 296 (9th Cir. 1996).

**The Motion to Dismiss**

As in the first amended complaint, Plaintiff alleges that the following statements are actionable:

- "We still take pride in doing things The Colonel's way, utilizing only the highest quality ingredients, innovative recipes, and time-tested coking methods."
- KFC provides the "best food."
- "The good news is that all foods can fit into a balanced eating plan. That includes tacos, pizza, chicken, seafood and burgers."
- "You can enjoy 'fast food' as part of a sensible balanced diet."

(SAC ¶23).

In its prior Order, the court concluded that the statements, viewed in context, "are non-actionable puffery. No reasonable consumer would rely upon the statements as specific representations as to health, quality, or safety. The statements simply lack the sort of definite positive assertions of fact required to state a claim under any of the causes of action alleged by Plaintiff." (Order at 6:7-10). The court concluded that these statements and representations could not form the basis for any actionable claim. On this basis alone, the court grants the motion to dismiss on the operative complaint as the statements are non-actionable puffery.

In addition to the dismissed claims based upon the above-identified statements, the SAC alleges that KFC violated the Federal Food, Drug and Cosmetic Act ("FDCA") and California's Sherman Food, Drug and Cosmetic Law ("Sherman Law") by misbranding their food in violation of 21 C.F.R. § 403(a)(1), misbranding their food under California Health and Safety Code § 110660, and making actionable health claims in violation of 21 C.F.R. § 101.14. The alleged violation of these statutes and rules forms a basis for the state law claims. KFC argues that these claims are preempted because they conflict with the exclusive enforcement mechanism provided by Congress.

Violations of the FDCA may only be brought in the name of the United States. The statutory scheme provides that "all such proceedings for the enforcement, or to restrain violations of this chapter

shall be by and in the name of the United States." 21 U.S.C. § 337(a). The states are also permitted, in certain circumstances, to "bring in its own name and within its jurisdiction proceedings for the civil enforcement, or to restrain violations of the FDCA." 21 U.S.C. § 337(b). In <u>Buckman Co. v. Plaintiffs' Legal Committee</u>, 531 U.S. 341 (2001) the Supreme Court discussed the reach of the FDCA's preemptive provision, 21 U.S.C. § 337(a). There the plaintiff sought to bring a claim against a consulting company that assisted in processing a medical device through the FDA's administrative procedures. Plaintiff alleged that the consulting company committed fraud on the FDA by making misrepresentations concerning the medical device at issue. Plaintiff alleged that but for the misrepresentations the FDA would not have approved the devices and plaintiff would not have been injured. <u>Id.</u> at 344.

The Supreme Court noted that the consulting company's dealings with the FDA arose out of the Medical Devices Act ("MDA"), a comprehensive statutory scheme which regulates various classes of medical devices, and concluded that federalism concerns were minimal as the claims at issue were prompted by the MDA, not state law. The Supreme Court then held that plaintiff's state law fraud claims arising from the alleged violation of the MDA conflicted with the enforcement scheme of the FDCA and were therefore impliedly preempted by federal law. <u>Id.</u> at 348.

> State-law fraud-on-the-FDA claims inevitably conflict with the FDA's responsibility to police fraud consistently with the Administration's judgment and objectives. As a practical matter, complying with the FDA's detailed regulatory regime in the shadow of 50 States' tort regimes will dramatically increase the burdens facing potential applicants–burdens not contemplated by Congress in enacting the FDCA and the MDA.

<u>Id.</u> at 350. Further, noting the comprehensiveness of the regulatory scheme, the Supreme Court affirmed that such claims could only be brought by the Federal Government under 21 U.S.C. § 337(a) "rather than private litigants who are authorized to file suit for noncompliance with the medical device provisions." <u>Id.</u> at 350.

Here, as instructed in <u>Buckman</u>, the FDCA presents a comprehensive regulatory scheme of branding and labeling of food products. To overlay the state law tort system over the FDCA would significantly increase the burdens on the FDA to ensure uniform enforcement of its administrative

///

duties. Accordingly, to the extent Plaintiff contends that alleged violations of the FDCA and Sherman Law give rise to viable state law claims, such claims are impliedly preempted by the FDCA.[1]

**The Motion to Stay**

Plaintiff moves to stay this action pending review by the California Supreme Court of a state appellate court decision holding that misbranding claims for unfair competition under § 17200, deceptive trade practices, false and misleading advertising, and negligent misrepresentation are preempted by the FDCA. See In re Farm Raised Salmon Cases, 142 Cal.App.4th 805 (2006), review granted, December 13, 2006. Plaintiff argues that the California Supreme Court would resolve the issue of whether state law claims for deceptive marketing of food products are preempted by federal law.

A stay is an extraordinary remedy to be granted sparingly. See Hilton v. Braunskill, 481 U.S. 770, 776 (1987). Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred upon them. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976); Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996). In the interest of "wise judicial administration," federal courts may stay a case involving a question of federal law where a concurrent state action is pending in which the identical issues are raised. Id. at 815. Plaintiff argues that Colorado River abstention should apply under the present circumstances because the California Supreme court will address the preemption issue.

The court declines to stay the present action because Plaintiff fails to establish exceptional circumstances warranting the requested relief. The California Supreme Court's decision on the question of federal preemption is not binding on this court. As explained in Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 28 (1983), a stay under Colorado River is only appropriate if the parallel state-court litigation "will be an adequate vehicle for the complete and prompt resolution of the issues." Here, resolution of the In re Farm Raised Salmon Cases will not resolve the preemption issue as this court is not bound to follow the California Supreme Court on any issue of federal law. Consequently, the court declines to stay this action.

---

[1] The court further notes that there does not appear to be any private right of action to enforce misbranding claims under 21 U.S.C. § 371(a).

In sum, the motion to dismiss is granted with prejudice and without leave to amend as there are no circumstances under which Plaintiff can state a claim. The Clerk of Court is instructed to close the file.

**IT IS SO ORDERED**.

DATED: April 27, 2007

_____
Hon. Jeffrey T. Miller
United States District Judge

cc: All Parties